SILVERS BOX CORPORATION v. BOYNTON LUMBER CO. (No. 326.)

Court of Civil Appeals of Texas. Eastland. June 17, 1927.

Rehearing Denied Sept. 16, 1927.

1. Sales ⟺89—Jury's finding that written lumber purchase contract had not been modified by oral one held supported by the evidence.

Where the question was whether a written contract for the purchase of lumber had been modified by an oral one, jury's finding that there had been no such modification *held* supported by the evidence.

2. Accord and satisfaction ⟺10(1)—Compromise and settlement ⟺6(2)—Payment of less than amount owing, though in full satisfaction of indebtedness, does not constitute "accord and satisfaction," in absence of bona fide dispute of amount due.

The payment of a less sum than the amount owing, even though payment be made in full satisfaction of the indebtedness, does not constitute an "accord and satisfaction," unless there is a bona fide dispute between the debtor and creditor as to the amount due.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accord and Satisfaction.]

3. Accord and satisfaction ⟺10(1)—Compromise and settlement ⟺6(4)—Jury's finding contract alleged did not exist precluded bona fide dispute thereon, hence there could be no accord and satisfaction.

Since a bona fide claim cannot be based on a contract which had no existence, jury's finding that contract claimed by defendant did not exist precluded there being a dispute in good faith founded thereon, hence there could be no accord and satisfaction.

4. Accord and satisfaction ⟺7(1)—Compromise and settlement ⟺5(2)—Payment of sum less than debt in full satisfaction thereof does not bar suit to recover balance.

The payment and acceptance of a sum of money less than the liquidated amount of indebtedness due in full satisfaction of a debt is without consideration, and does not bar the creditor's suit to recover the balance.

---

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Dallas County.

Action by the Boynton Lumber Company against the Silvers Box Corporation. Judgment for plaintiff, and defendant appeals. Affirmed.

George Sergeant, of Dallas, for appellant. Carl B. Callaway, of Dallas, for appellee.

HICKMAN, J. The appellee, A. L. Boynton, trading under the name of A. L. Boynton Lumber Company, contracted to sell to appellant 17 cars of No. 2 sap gum lumber at the price of $32 per thousand feet, to be used by appellant in the manufacture of boxes. After a few cars had been shipped under the contract a controversy arose between the parties regarding the grade and quality of the lumber, which controversy was finally settled by a contract in writing in lieu of all former contracts, and which reads as follows:

"Dallas, Texas, August 6, 1921.

"A. L. Boynton Lumber Company, Lufkin, Texas.—Gentlemen: In line with our conversation of this date, you may ship us, beginning at your convenience, the fourteen cars of lumber, invoices to be dated ten days apart irrespective of the date of shipping cars. We will credit you with $17.50 per thousand on open account and pay for same in sixty to ninety days. The balance of the invoice is to be credited on a time account, and we are to take not to exceed twelve months to pay for this difference. We expect to liquidate the difference from time to time as we are able. You may invoice these cars at the average price of $27.25 per thousand f. o b. Dallas. It is understood these cars will average about 15,000 feet each. Yours very truly, Silvers Box Corporation, by J. C. Silvers." (Signed in ink.)

Thereafter two cars of lumber were shipped by appellee to appellant, which appellant declined to accept, and further negotiations were entered into, resulting in the execution of a supplemental contract as follows:

Dallas, Texas, August 18, 1921.

"A. L. Boynton Lumber Company, Lufkin, Texas—Gentlemen: In line with our conversation of even date, we will unload cars of lumber and lay out all bad lumber which be believe will not be No. 2, and this pile will be yours. In case we cannot agree on disposition of rejected lumber, we will call the inspector of the Southern Pine Lumber Company to grade it at your expense, and we will accept it at this grading. The No. 3, should there be any, will be accepted at the market price. Yours very truly, Silvers Box Corporation, by J. C. Silvers." (Signed in ink.)

"Accepted: A. L. Boynton Lumber Co., by A. L. Boynton." (This notation written in ink.)

It was agreed by the parties that under these contracts there was shipped by appellee and received by appellant the amount of lumber which is set out in the pleadings of the parties. Appellant claimed that after the execution of these contracts and on August 22, 1921, by a conversation over long-distance telephone the contract was modified and superseded, so that the price to be paid by appellant to appellee for the lumber was $17.50 per thousand feet. Appellee denied this. Each of the cars of lumber was shipped to appellant by appellee, and within 90 days after each shipment appellant sent appellee its check based upon the price of $17.50 per thousand feet in accordance with the provisions of the written agreement. Appellant claims that these checks were in full payment of the contract price under the oral agreement of August 22d. Each check was accompanied by a letter of remittance, which letter recited in each case that the check was in full settlement for the particular car covered by the letter, and each check was marked "in full" for a particular car of lumber, the number of which car was given.

On November 16th, appellee cashed the first check above referred to and wrote appellant that he would not accept same as payment in full but only on account. As the lumber was shipped the other checks continued to come to appellee, each accompanied by a letter reciting that it was in full payment of that particular car and each marked "in full" for the particular car mentioned. Appellee held all of the checks without cashing them, sending them back to appellant once or twice, asking the appellant to erase the words "in full" from the checks in order that appellee might cash them. This appellant declined to do.

Many letters were written by appellee to appellant concerning the checks, requesting appellant to agree that the checks might be cashed and credited on account, but stating that otherwise the checks would not be received and cashed. Appellant refused to issue any other checks or to modify in any degree the checks as written or letters accompanying same. On April 10, 1922, appellee, through its attorney, E. J. Mantooth, wrote appellant at length upon the subject, reciting the fact that all of the various checks were in the possession of appellee and could not be cashed because of the conditions and restrictions placed therein and thereto by appellant. The closing paragraph of this letter reads as follows:

"Any statement from you to the effect that you will owe the Boynton Lumber Company the difference between the lumber shown to have been received by you and the total amount as per the checks named above will be satisfactory, and for the reason that it will enable Mr. Boynton to cash the checks without admitting that they are in full satisfaction of all sums due A. L. Boynton Lumber Company by your company on the fourteen cars shipped, and I trust I may have an early reply from you."

No reply was made to this letter by appellant. On May 6th thereafter appellee cashed all of the checks. This suit was instituted by appellee against appellant to recover the balance due for the lumber as per the written contracts above set out.

The inspector of the Southern Pine Lumber Company, at the request of appellee, graded the lumber which was discarded from the cars by appellant in accordance with the terms of the contract of August 18th, copied above, and the proper credits were allowed appellant on account of the grades. There is no issue in this case regarding that matter. The only real issue of fact upon the trial was whether or not the written agreements of August 6th and August 18th were superseded by an oral agreement over the telephone on August 22d, as claimed by appellant. Appellee denied the conversation, and denied positively any contract or agreement subsequent to August 18th which in any manner modified the terms of the written contracts.

The only issue submitted by the court to the jury in the main charge was as follows:

"Did the plaintiff and defendant on or about August 22, 1921, enter into a verbal agreement whereby the contracts of August 6, 1921, and August 18, 1921, were canceled, and whereby it was agreed that the price of lumber bought and sold under such contracts was to be in the sum of $17.50 per thousand feet only?"

The answer of the jury to this issue was, "No."

At the request of appellant the following additional issue was submitted to the jury:

"At the time defendant sent the checks in question to plaintiff was there a bona fide dispute between the parties asserted in good faith on both sides as to the amount due?"

To this issue the jury answered, "No."

Upon these findings by the jury judgment was entered against appellant for $1,970.37, from which judgment appeal has been duly perfected.

[1] The case is briefed by appellant under two propositions. One of these propositions complains of the sufficiency of the evidence to support the jury's findings. We have carefully read the statement of facts. It would serve no purpose to detail in this opinion all the facts testified to with reference to the issues submitted to the jury, but in our opinion the findings of fact by the jury have abundant support in the testimony. A. L. Boynton, the plaintiff below, testified positively that the written contracts set out above were never modified, canceled, or superseded. That would be sufficient within itself to support the findings of the jury; but the circumstances, including the letters written by appellant, strongly corroborate his testimony. In fact, to our minds the verdict of the jury is in accord with the preponderance of the evidence.

The other question presented by appellant relates to the question of accord and satisfaction. Appellant claims that there was a bona fide dispute between the parties asserted in good faith on both sides as to the amount due by appellant to appellee, and that the acceptance by appellee of the checks under the circumstances shown above constituted an accord and satisfaction. In support of its contention the following cases are cited and relied upon: Bergman v. Brown (Tex. Civ. App.) 172 S. W. 554; Clopton v. Caldwell County (Tex. Civ. App.) 187 S. W. 400; Fennell v. Troell (Tex. Civ. App.) 226 S. W. 442; Early-Foster Co. v. Klump (Tex. Civ. App.) 229 S. W. 1015; Hussey v. Crass (Tenn. Ch. App.) 53 S. W. 986.

[2, 3] Appellant concedes the law to be that the payment of a less sum than the amount owing, even though the payment was made in full satisfaction of the indebtedness, does not constitute an accord and satisfaction, unless there was a bona fide dispute between the debtor and creditor as to the amount due. It is claimed by the appellant, however, that the undisputed evidence shows that there was a bona fide controversy between the parties in this case as to the amount due, and that, therefore, as a matter of law, the cashing of the checks was an accord and satisfaction of appellee's claim against appellant. We cannot agree to this contention. Appellant itself requested that this very issue be submitted to the jury. The jury found that there was no controversy in good faith between the parties. As stated above, this finding was abundantly supported by the testimony. Appellant did dispute the amount of appellee's claim, but the dispute was based upon an alleged oral contract superseding the written contracts. The jury found upon sufficient testimony that no such oral contract was ever made. There being no such contract, certainly appellant could not in good faith dispute a claim based thereon. A bona fide claim cannot be based upon a contract which had no existence. We cannot sustain either proposition advanced by appellant, and the judgment of the trial court will therefore be affirmed.

[4] The writer is of the opinion that this court could well justify itself in reversing and rendering this case on another ground. The old common-law rule that the payment and acceptance of a sum of money less than the liquidated amount of indebtedness due in full satisfaction of the debt is without consideration, and does not bar the creditor's suit to recover the balance, has been the subject of a great many opinions by the courts of this country and England since the famous Pinnel Case, in 1602, in which Lord Coke announced the rule. Pinnel's Case, 5 Coke, p. 117a.

The reading of a large number of opinions upon the question has convinced the writer that about the only purpose the rule serves at the present time is to furnish a subject for ridicule by the judges who write thereon. All courts seem to agree that the rule is unreasonable, unjust, and not adapted to modern business conditions. While citing it as the rule of law, courts seem never to follow

it, as the most trivial exceptions are invented from time to time to escape the effect thereof. One of the exceptions which has been devised is that, if the payment is made by negotiable note or check instead of cash, this will afford sufficient consideration to support the contract of accord and satisfaction. Goddard v. O'Brien, 9 Q. B. Div. 37; Shelton v. Jackson, 20 Tex. Civ. App. 443, 49 S. W. 415.

If we were inclined to indulge in exceptions appearing to us to be trivial, we could well reverse and render this case, because appellant paid by check instead of cash; but, since the courts of our state have repeatedly announced the general rule, we conceive it to be the rule in our state and are here following it, although it seems to be honored more by its breach than by its observance.

Some of the states, through their Supreme Courts, have completely cut away from the rule. So far as we are advised Mississippi was the first state to repudiate it. In the case of Clayton v. Clark, 74 Miss. 499, 21 So. 565, 22 So. 189, 37 L. R. A. 771, 60 Am. St. Rep. 521, Chief Justice Woods wrote a very readable opinion in which he formally announced the independence of Mississippi therefrom.

The Supreme Court of Arkansas cut loose from it in the case of Dreyfus & Co. v. Roberts, 75 Ark. 354, 87 S. W. 641, 69 L. R. A. 823, 112 Am. St. Rep. 67, 5 Ann. Cas. 521. Chief Justice Hill in the opinion in that case carefully reviewed the history of and reason for the rule and exposed its impracticability.

The Supreme Court of New Hampshire followed the example of Mississippi in the case of Frye v. Hubbell, 74 N. H. 358, 68 A. 325, 17 L. R. A. (N. S.) 1197. Chief Justice Parsons of that court made even a more extended analysis of the case than had been made by the other judges above mentioned, and in a very well-considered opinion announced that New Hampshire should no longer follow the rule.

South Carolina has all but repudiated it in the case of Ex parte Zeigler, 83 S. C. 78, 64 S. E. 513, 916, 21 L. R. A. (N. S.) 1005.

Justice Hunter of the Fort Worth court in the case of Shelton v. Jackson, 20 Tex. Civ. App. 443, 49 S. W. 415, wrote at great length upon the same question, lamenting the fact that he had not the power to follow the example of the Mississippi court and overrule the rule. Not having the power, he invented an admittedly new exception to it.

It seems to be conceded by the parties to this suit that the appellee never agreed to accept these checks in satisfaction of the entire amount due. In that event the rule would have no application. The writer cannot adopt this view of the facts. Appellee testified that he knew when the checks were cashed that appellant was claiming that they were in full payment for each car. A long debate was carried on between the parties with regard to these checks before they were cashed, in which appellee was seeking to have appellant modify the terms and conditions upon which they were sent to appellee. This appellant refused to do. Under these facts the writer does not believe that the appellee could accept and appropriate these checks and then be heard to claim that he did not agree to the conditions imposed upon their acceptance by appellant. The checks were the property of appellant, who offered them to appellee at a stated price. Appellee accepted them. Necessarily the acceptance related to the offer. His declaration that he did not so accept them could not change the effect of his act.

3 Williston on Contracts, § 1856, makes this question very plain in this language:

"It is a general principle that where an act may rightfully be done with certain consequences or effect, the actor cannot assert for his own advantage to avoid that effect, that the act was done wrongfully. One who is offered goods at more than their market value, cannot take them and say, 'I will convert them, but not buy them,' and thereby render himself liable for only their market value."

"And so where money, a check, or other property is offered in settlement of a liquidated or disputed claim, 'the law permits but two alternatives, either reject or accept in accordance with the condition.' It should be observed that the debtor must make it clear that the check which he sent is offered only on conditions that it is taken in full payment. The imposition of an accord and satisfaction on the creditor against his will can be justified only where his taking the check would be tortious except on the assumption of a taking in full satisfaction."

The writer believes that the only proper effect to be given to the acts of appellee in accepting and cashing the checks under the circumstances is an agreement on the part of appellee to accept same in full payment of all of appellant's indebtedness to him, and that the rule should be that the effect of this agreement is to discharge the entire indebtedness.

However, this seems not to be the rule in our state, and since we can see no substantial ground upon which to base an exception in this case, the judgment of the trial court is affirmed.