SHARP et al. v. BEACON OIL & REFIN-
ING CO. et al.

No. 5058.

Court of Civil Appeals of Texas.
Texarkana.

June 24, 1937.

Rehearing Denied Sept. 9, 1937.

McEntire, James & Shank, of Tyler, for
appellants.

W. M. Futch, of Henderson, and T. R.
Boone, of Wichita Falls, for appellees.

JOHNSON, Chief Justice.

L. A. Sharp and Mrs. C. D. Judd are the
owners of one-fourth of the oil and gas
royalty interest of a certain leasehold es-
tate covering 78 acres of land in Rusk coun-
ty. The Duo Oil Corporation and Pine Pe-
troleum Company are the owners of the
seven-eighths leasehold covering said land.
During the months of December, 1933, and
January, February, and March, 1934, said
owners of said seven-eighths leasehold es-
tate produced therefrom oil in excess of
the amount allowed by the rules and reg-
ulations of the Railroad Commission, and
ran the same to the pipe lines of the Beacon
Oil & Refining Company. T. P. Cannon is
the president and general manager of each
of the said four corporations; namely, the
Duo Oil Corporation, the Octo Oil Corpo-
ration, the Pine Petroleum Company, and
Beacon Oil & Refining Company. Said
royalty owners were paid $1 per barrel, the
posted price, for that portion of the oil au-
thorized by the rules and regulations of the
Railroad Commission to be produced and
run from the wells on said lease during the
above-mentioned time; and were paid 60
cents per barrel for the excess oil run dur-

ing the month of December, 1933, and 70 cents per barrel for the excess oil run during the months of January, February, and March, 1934. On August 11, 1934, L. A. Sharp, individually and as trustee, and Mrs. C. D. Judd, joined by her husband, C. D. Judd, filed this suit in the district court of Rusk county against the Beacon Oil & Refining Company, Duo Oil Corporation, Octo Oil Corporation, and Pine Petroleum Company, to recover of said defendants $1 per barrel, less the above-mentioned credits of 60 cents and 70 cents, for plaintiffs' royalty interest in the oil so produced in excess of the allowable. Plaintiffs alleged that the difference in the amount received by them (60 cents and 70 cents per barrel), and the posted price of $1 per barrel, for their royalty interest in said excess oil totaled $2,516.52, for which amount they asked judgment against all of said defendants jointly and severally. The defendants answered by general demurrer and general denial. The defendants Duo Oil Corporation, Octo Oil Corporation, and Pine Petroleum Company, owners and operators of the leasehold, specially alleged, in substance, that they had discharged their liability under the terms of the lease to the royalty owners by delivering the oil so produced in excess of the allowable to the pipe line to which they had connected their wells; namely, to the pipe line of the Beacon Oil & Refining Company. The Beacon Oil & Refining Company specially alleged that, since the oil had been produced in violation of rules and regulations of the Railroad Commission, it was more trouble to dispose of than legal oil, and for that reason they were only liable to the royalty owners for the value of the oil at excess oil prices, instead of the regular posted price of crude oil.

On trial of the case before a jury it was shown that the defendant Beacon Oil & Refining Company had issued checks to the plaintiffs for the allowable oil at $1 per barrel; and had issued separate checks to the plaintiffs for the excess oil at prices of 60 cents and 70 cents per barrel, and on which checks was placed the following indorsement: "This check is in full settlement of account as shown hereon. Acceptance by endorsement constitutes receipt in full." Appellants cashed these checks after placing on them the following and similar indorsements: "This check is endorsed and accepted as only partial payment for oil run from the Afton Thrash lease during the month of February, 1934, besides oil run

from said lease during the said month as listed on back of check No. 8571, dated March 12, 1934. This endorsement is in no sense to be construed as a payment for all oil run from said lease during said months." An agreed exhibit from defendants' books showed the difference in the prices of 60 cents and 70 cents, and $1 per barrel for plaintiffs' royalty interest in the excess so produced and run totaled $2,845.39.

In answer to special issues the jury found: (1) That the plaintiffs agreed with the defendants to run excess oil during the period in controversy; (2) that plaintiffs did not accept the checks in question in full and final satisfaction of all claims against defendants for the oil in question; (3) that the reasonable cash market value of crude oil during the period in question was $1 per barrel; (4) that the reasonable cash market value of "excess" oil during the period in question was 40 cents per barrel.

Judgment was entered that plaintiffs take nothing by reason of their suit and that the defendants recover their costs. Plaintiffs have appealed.

Appellants, by proper objections and exceptions in the trial court and by assignments here, challenge the findings of the jury, as being without support in the pleadings or evidence, wherein the jury found that plaintiffs agreed with defendants to run excess oil during the period of time in controversy; and that the court erred in not sustaining plaintiffs' motion for instructed verdict and for judgment non obstante veredicto.

■ Appellees' answer contains no plea or allegation that their action in producing and running the oil in excess of the legally allowable was by consent or agreement of the plaintiffs. The finding of the jury that the plaintiffs agreed with defendants to run excess oil during the period of time in controversy appears to be without support in the evidence. T. P. Cannon, president and general manager of the four defendants, testified on trial of the case that Dr. C. D. Judd, husband of plaintiff Mrs. C. D. Judd, agreed that defendant companies operating the leases could produce oil from the leases during the period of time in controversy in excess of the amount legally allowed. But there is no pleading nor is there any evidence in the record that Dr. C. D. Judd was acting as the agent of his wife, Mrs. C. D. Judd, or that he was authorized by Mrs. Judd to enter into such an agreement. Cannon's testimony as above related is all

the testimony that any one agreed that he, Cannon, or his companies could produce and run excess oil from the leases. There is no testimony that L. A. Sharp or Mrs. C. D. Judd, plaintiffs in the case, ever agreed to the production of excess oil. Therefore the verdict of the jury that the plaintiffs agreed with the defendants to run excess oil during the period in controversy is without support in pleading and in evidence.

Appellees contend, in substance, that since the appellants in their pleadings showed that the oil for which they sought recovery was produced and run to the pipe line in violation of the rules and regulations of the Railroad Commission, that plaintiffs could only recover the market price of "excess" oil. We do not sustain this contention. Appellants' right of recovery is based upon a legal contract as evidenced by the terms of the lease. Their right of recovery requires no aid from illegal conduct of (nor purported agreement with) defendants in producing and running the excess oil. On the other hand, the defendants' defense rests in its own illegal conduct in producing and in running the oil from the lease in excess of the amount allowed by the rules and regulations of the Railroad Commission.

"The test for determining whether a demand connected with an illegal act can be enforced is whether the person seeking to enforce it requires any aid from the illegal transaction to establish his case. No recovery can be had if it is necessary for the plaintiff to prove, as part of his cause of action, his own illegal transaction. But the plaintiff may recover if he can show a complete cause of action without being obliged to prove his own illegal act, although such act may incidentally appear, and may be explanatory even of other facts in the case, it being sufficient if his cause of action is not essentially founded upon something which is illegal." 10 Tex.Jur. 254, § 145.

Referring to appellees' contention that the Duo Oil Corporation, Octo Oil Corporation, and Pine Petroleum Company, owners and operators of the leases, discharged all liability to the appellants, royalty owners, by delivering to said royalty owners' credit the oil in question into the pipe line to which said lessees had connected their wells. As pertinent, the lease provides:

"In consideration of the premises the said lessee covenants and agrees:

"1st: To deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect his wells, the equal one eighth part of all oil produced and saved from the leased premises."

In ordinary circumstances appellees' contention would appear to be sound. But here one and the same party, as president and general manager of the four corporations involved, is directing the unlawful transaction in united effort to produce and dispose of the oil in violation of law. In such circumstances we would not be authorized to lend legal aid to the unlawful undertaking by freeing any of the legal entities involved from liability.

The judgment of the trial court is reversed and judgment is here rendered for appellants against each of the appellees, jointly and severally, for the sum of $2,516.52.

### On Motion for Rehearing.

This cause pending on motion for rehearing, it is concluded that we were in error in rendering a joint and several judgment against all appellants for the aggregate of the unpaid balances shown to be due by each lessee and the Beacon Oil & Refining Company, for oil run and converted from the respective leases; that, instead, judgment should have been rendered respectively against each lessee and the Beacon Oil & Refining Company, jointly and severally, for the particular unpaid balance due appellants from each lease separately, for oil run by such lessee and so converted by it and said Beacon Oil & Refining Company.

The judgment heretofore rendered by us on the 24th day of June, 1937, will be set aside and judgment will now be rendered as last above expressed.