## GEYER et al. v. ORTIZ OIL CO.

### No. 5473.

Court of Civil Appeals of Texas. Texarkana.

Nov. 21, 1939.

Rehearing Denied Dec. 7, 1939.

Storey, Sanders, Sherill & Armstrong, of Dallas, for appellants.

J. E. Hall, John Davenport, and Arthur Tipps, all of Wichita Falls, and McDavid & McDavid, of Henderson, for appellee.

WILLIAMS, Justice.

Adolph A. Geyer, Will Thompson, Mrs. J. A. Ferguson, Augusta Nichols, and R. G. Storey, the owners of $9/80$, $1/8$, $1/8$, $1/8$, and $93/1040$, respectively, of the oil and gas royalty interest under a leasehold estate called the Tolliver lease in the Juan Zimines Survey in Rusk County, sued the Ortiz Oil Company, the owner and operator of the $7/8$ leasehold estate, for their proportional part of the market value of 303,899 barrels of crude oil which they allege the defendant produced, sold and converted to its own use from the lease (during December 1933 through 1934, and in April 1935) in excess of the amount allowed by the rules and regulations of the Railroad Commission of Texas.

In addition to a general demurrer and general denial, defendant pleaded and urged as a defense that the excess oil was not as marketable as the allowable oil but was sold for the highest market price obtainable, and checks at numerous times were issued by the Ocean Oil Company and the Louisiana Brokerage Company to plaintiffs for their pro rata part of the excess oil which plaintiffs accepted and cashed. That during this same period plaintiffs received regularly checks from a pipe line company for their pro rata part of the allowable oil. That plaintiffs knew, or could have known by the use of reasonable diligence, that they

were being paid for excess oil by the checks issued by the Ocean Oil Company and the Louisiana Brokerage Company. That they should now be estopped from recovering any additional amount for above reason, and for the reason that they agreed to, acquiesced to, and participated in the production of excess oil, and since the same was produced in violation of the Railroad Commission's orders, plaintiffs cannot recover any sum other than that already paid.

Plaintiffs replied with general demurrer, special exceptions, general denial, and further answered that these were fictitious concerns dominated and controlled by defendant for the purpose of running excess oil, of which plaintiffs had no knowledge, and the checks by them did not disclose what amount, price, or kind of oil same covered.

In response to special issues the jury found: (1) That the Ocean Oil Company and the Louisiana Brokerage Company were fictitious purchasers and defendant used such names in disposing of excess oil from the lease; (2) that each plaintiff knew, or could have known by the exercise of reasonable diligence, that the checks received and cashed by him or her represented excess or illegal oil; (3) that each of the plaintiffs accepted the checks tendered in full satisfaction of his or her portion of the excess run from the lease; but (4) that at the time the plaintiffs cashed said checks from Ocean Oil Company and Louisiana Brokerage Company they were not advised of, or by the exercise of reasonable diligence could not have ascertained the amount of excess oil run or the price being paid therefor.

The verified reports made by defendant to the State Comptroller discloses the amount of allowable oil produced during the period and sold to Century Refining Company which remitted by check monthly for the allowable at the posted price of $1 per barrel. Recovery for any allowable oil is not involved in this suit. The reports reveal and defendant admits it had produced in the same months 297,899 barrels of oil in excess of the amount allowed by the rules and regulations of the Railroad Commission of Texas, such excess being colloquially known as "hot oil."

It is to be observed from pleadings herein detailed that defendant urged an accord and satisfaction. The court entered judgment in favor of defendant grounded upon this theory of defense. Plaintiffs by proper objections, exceptions and assignments assert that the court erred in not sustaining plaintiffs' motion for instructed verdict at the close of the evidence, and in refusing their motion for judgment non obstante veredicto; and in the alternative, urges a conflict in the jury findings.

May 2, 1934, defendant filed its first production reports. This covered the previous months of December, January, February, and March, and showed 82,352 barrels of hot oil produced, of which 13,849 barrels were sold to Ocean Oil Company and the remainder to Century Refining Company, Golden Oil Company, and Tyler Pipe Line Company. The first remittance any plaintiff received other than the checks from the Century Refining Company for the allowable oil was in the form of a cashier's check which was mailed from Shreveport on or about March 24, 1934. No data accompanied this remittance to reveal what it was in payment for or from whom it came. Defendant claims such cashier's checks were remittances of the Ocean Oil Company.

Defendant produced from the lease in July, August, and September, 1934, and reported sold to Century Refining Company 36,777 barrels; Ocean Oil Company 37,767 barrels; and Louisiana Brokerage Company 46,326 barrels of excess oil for $41,207.64. Reports covering these months were filed in September, October, and November. On or about October 27, 1934, plaintiffs received their first checks from Louisiana Brokerage Company. Checks of this date, which aggregated $1,154.19, do not cover plaintiffs' pro rata part, even at the price defendant reported same sold for. Production of 70,998 barrels in October, and 3,471 barrels in December was reported in January, 1935. Onava Oil Company received the December oil. The amount of 20,208 barrels produced in April was reported in June 1935. Each plaintiff received his second check from Louisiana Brokerage Company on November 20, 1937, and continued to receive small remittances from the same source through January, May, June, August and September, 1935. No report filed by defendant shows any production from the lease for the last mentioned months. No showing is made that the Onava, Golden, or Century Companies ever remitted to plaintiffs for any of the excess oil so reported sold to them. Plaintiffs were never furnished any memorandum or statement which revealed anything about the amount of oil involved, when

produced, how produced, or price for which it was sold. The checks issued by Louisiana Brokerage Company did contain a clause reading: "This check is in full settlement of account as shown hereon. Acceptance by endorsement constitutes receipt in full." There was no "account as shown hereon." Also Louisiana Brokerage Company did enclose a memorandum which read: "The enclosed check is in payment of your net royalty interest for oil purchased from the Tolliver lease for the month of October 1934"; others of similar reading were issued for September and December 1935.

Some of the plaintiffs went to Shreveport to ascertain from the Ocean and Louisiana Brokerage Company what these early remittances covered. Neither concern could be located. Subsequently a lawyer out of Tyler, to whom they were directed, promised to send plaintiffs statements for such oil sold, showing the price and amounts and whether or not the remittances were for allowable oil, but this was not done. Plaintiffs later cashed and retained these remittances. Judgment in favor of the State of Texas against defendant for penalties for producing excess oil was entered in October or November of 1936. After some correspondence and demand for an accounting plaintiffs filed suit in June 1937.

■■ Admitting that plaintiffs knew, or could have known by the exercise of reasonable diligence, that the checks received represented excess or illegal oil, as found by the jury, plaintiffs were never informed for what amount of oil or the price the remittances purported to cover. Correctly did the jury find that at the time plaintiffs cashed said remittances they were not advised of, or by the exercise of reasonable diligence, could not have ascertained the amount of excess oil run or the price being paid therefor. And from a study of this record it cannot now be determined what particular oil the respective remittances covered. If defendant remitted a part of the amount due through the agencies of the Ocean and Louisiana Brokerage Company, which the jury found were fictitious concerns, it performed only in part its legal obligation. Under the lease defendant was obligated to pay plaintiff for the oil produced. There was no bona fide dispute between these parties. Plaintiffs were kept in the dark as to what extent the remittances covered. This suit is based upon a liquidated demand, that is, a recovery of plaintiffs' pro rata part of the oil produced at the market value of $1 per barrel. Under this record the defense of accord and satisfaction is not tenable. The acceptance of the checks will be considered only as a part payment for the oil. "An accord and satisfaction * * * requires the meeting of the minds of the parties and knowledge by both of the relevant facts, in order to render the same valid and effectual." Chicago Fraternal Life Ins. Ass'n v. Herring, Tex.Civ.App., 104 S.W.2d 901, 903. See also Bergman Produce Co. v. Brown, Tex.Civ.App., 156 S.W. 1102; Simms Oil Co. v. American Refining Co., Tex.Com. App., 288 S.W. 163; United States v. Skinner & Eddy Corp., D.C., 28 F.2d 373; Silvers Box Corp. v. Boynton Lumber Co., Tex.Civ.App., 297 S.W. 1059; 1 C.J. p. 476, Sec. 6; Chester v. American Law Book Co., Tex.Civ.App., 102 S.W.2d 501.

■ Defendant went upon and operated this leasehold under a contract wherein it contracted to deliver to the owners of the royalty, free of cost, in the pipe line, the equal ⅛ part of all oil produced and saved from the premises. And it may be added that under this contract the parties intended for the laws to be observed and obeyed. Plaintiffs' right of recovery is based upon a legal contract as evidenced by the terms of this lease. Their right of recovery requires no aid from illegal conduct of defendant in producing and running excess oil. Sharp v. Beacon Oil & Refining Co., Tex.Civ.App., 108 S.W.2d 870; Turnbow v. Lamb, 5 Cir., 95 F.2d 29.

Counsel agreed that in the event there should be a recovery for plaintiffs for any sum, such judgment should bear credits "for the total amounts paid to the respective plaintiffs by the Ocean Oil Company and/or Louisiana Brokerage Company as evidenced by checks in evidence and any cashier's checks that may be hereafter produced that were endorsed by any of the plaintiffs herein." The checks introduced together with admission of receipt of certain cashier's checks show total received by Geyer of $636.39; Thompson $1,175.71; Ferguson $949.09; Nichols $949.09; and Storey $670.48. These credits so determined and the respective royalty interests, the amount of excess oil produced and its posted or market price of $1 being without controversy, the cause is reversed and judgment is here rendered that of and from the defendant, Ortiz Oil Company, a corporation, plaintiff Adolph A. Geyer recover the balance due in the sum of $3,552.81; like-

wise Will Thompson the sum of $5,030.51; August Nichols the sum of $3,705.57; Mrs. J. A. Ferguson the sum of $3,705.57; and R. G. Storey the sum of $2,659.40.

The judgment is reversed and rendered.

## On Motion for Rehearing.

Defendant contends that in no event are plaintiffs entitled to recover at a higher rate than 50¢ per barrel for the illegal oil so produced, because the jury found the average reasonable cash market value of illegally produced or "hot" oil to be 50¢ per barrel. We do not sustain this contention. Sharp et al. v. Beacon Oil & Refining Co. et al., Tex.Civ.App., 108 S.W. 2d 870. In our original opinion we concluded that the market value of this illegally produced oil was $1 per barrel. The oil was produced from the same wells and at the same time. Defendant sold all the legally produced oil at $1 per barrel. The posted price of all legally produced oil was $1, and there is no evidence of any other price prevailing in the district during this period of time involved.

However, the oil produced was chargeable with a production and pipe-line tax of 2³⁄₁₆¢ per barrel which was not deducted in our former computation. To this extent the former judgment is modified so as to read that of and from the defendant Ortiz Oil Company, a corporation, plaintiff Adolph A. Geyer recover the balance due in the sum of $3,461.17; likewise Will Thompson the sum of $4,894.74; Augusta Nichols the sum of $3,603.75; Mrs. J. A. Ferguson the sum of $3,603.75; and R. G. Storey the sum of $2,586.59.

With this modification, the motion for rehearing is respectfully overruled.