## J. A. SHELTON v. S. A. JACKSON ET AL.

Decided February 7, 1899.

**1. Damages—Liquidated Demand or Penalty.**

A bond conditioned for the payment of a given sum in case the obligor fails to deliver cattle contracted for on a date specified, and for the payment of a proportionate amount upon his failure to deliver any part of them, is a liquidated demand.

**2. Bond for Delivery—Day of Maturity.**

A bond given to secure the delivery of a certain number of cattle before a specified date, conditioned for the payment of a definite amount upon failure to do so, matures on the close of the day when by its terms the delivery was to be completed

**3. Duress—Insolvency Is Not.**

It is not such duress as will avoid settlement and the discharge of a bond for less than its amount that the obligor held money of the obligee advanced to him under a contract to secure the performance of which the bond was given, and that the obligor had transferred all his property and was insolvent.

**4. Contract—Consideration of Settlement.**

That the principal and surety in a bond given to secure the performance of a contract and involving matters of uncertainty are insolvent is a sufficient consideration to support a settlement and discharge of the bond for a less amount than that secured by it, and an action will not lie thereafter to recover the balance.

APPEAL from Shackelford. Tried below before Hon. A. A. CLARKE, Special Judge.

*Frank & Young* and *Webb & Blanton*, for appellant.

*W. J. & Eli Oxford* and *Boren & Warren*, for appellees.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought by appellant Shelton in the District Court for Shackelford County on July 1, 1897, against S. A. Jackson, as principal, and G. E. Toliver, as surety, to recover $4500 on the following bond, dated April 10, 1897, and signed by both defendants:

"Know all men by this instrument of writing, that whereas, S. A. Jackson, of Erath County, Texas, and J. A. Shelton, of Shackelford County, Texas, have entered into a contract, substantial copy of which is hereto attached, made a part hereof, and referred to for description; now therefore, we, Sam Jackson, as princial, and the others whose names are hereto signed as sureties, acknowledge ourselves bound to pay to the said J. A. Shelton the sum of four thousand and five hundred dollars ($4500.00), conditioned as follows: If the said S. A. Jackson shall fail to deliver any of said cattle then this bond shall be good for the full amount thereof, and J. A. Shelton may recover the full amount thereof. If the said Jackson shall fail to deliver any number of said cattle contracted to be delivered, then this bond shall be good for the amount and proportion which the value of such cattle not delivered shall bear to the whole amount of this bond. The values of the several classes of cattle shall be estimated as they are provided in the contract hereto attached,

which values have been agreed upon. This bond is payable at Albany, Shackelford County, Texas."

Across the face of this bond, as shown by a copy attached as an exhibit to plaintiff's petition, was the following indorsement: "Received on the within bond $3050 in full settlement. A. P. Young, atty. for J. A. Shelton."

The contract referred to therein as attached thereto was signed by S. A. Jackson and J. A. Shelton, bore even date with the bond, and evidenced a sale of 100 cows by Jackson to Shelton, to be delivered to Shelton on his ranch in Shackelford County, Texas, between the 20th day of May and the 1st day of June, 1897, Shelton agreeing to pay therefor the sum of $14.50 for every cow so delivered with a calf following, and $11.50 for every cow without a calf; also 100 heifer cattle to be two years old on the 1st day of June, 1897, for which Shelton agreed to pay $9.50 per head; also 100 heifer cattle, each to be one year old on the 1st day of June, 1897, for which Shelton agreed to pay the sum of $7.50 per head; all in cash upon delivery as aforesaid.

The contract contained this further stipulation: "The said Shelton agrees to place in the First National Bank of Albany the sum of three thousand, and to give the said Jackson a draft on said bank for that amount, which money the said Jackson agrees to use in purchasing said cattle, and when the said Shelton pays for the same then this three thousand dollars, or so much thereof as is used by the said Jackson in purchasing said cattle, is to be deducted from any amount due by said Shelton to the said Jackson under this contract. Should the said Jackson not use all of said money, then the amount not used shall be either returned to the said Shelton or allowed to him as a credit upon final settlement under this contract."

No cattle were delivered under this contract.

In order to avoid the legal effect of this indorsement of full settlement written on the face of the original bond, the plaintiff alleged that this settlement was obtained by fraud and duress of plaintiff's property, in that Jackson was holding $3050 of plaintiff's money advanced to him under the stipulation in the contract aforesaid, and that he and Toliver had both transferred all their property to defraud their creditors and had thus become insolvent, and that Jackson refused to deliver back to him the amount so placed in his hands unless he would accept it in full settlement of all liability on the bond and release the same in full, and in order to get possession of his said money he was thus forced and compelled, on the 1st day of June, 1897, to accept said $3050 in full satisfaction of said bond as aforesaid, and furthermore than there was no consideration for the release of said bond. The petition was sworn to.

The defendants demurred to the petition generally and also specially. The general demurrer was sustained, and plaintiff declining to amend, his suit was dismissed, and from this judgment of dismissal this appeal is taken.

We think the bond as declared upon was a liquidated demand for

$4500. Farrar v. Beeman, 63 Texas, 175; Eakin v. Scott, 70 Texas, 442; Yetter v. Hudson, 57 Texas, 610. And as the settlement and payment of the $3050 made, as alleged, on June 1, 1897, was for a less sum than the full amount of liability thereon, the serious question arises whether there was any consideration for the release of the balance of the bond.

It is well settled that if the debt is not mature, the acceptance by the creditor of a less sum than the full amount in full satisfaction of the whole is valid and binding. But had this bond matured on June 1, 1897?

We think it had. The language of the contract is: "Said cattle are all to be delivered to the said Shelton on his ranch in Shackelford County, Texas, *between* the 20th day of May, 1897, and the 1st day of June, 1897." The days between these dates are May 21st to 31st, inclusive. If the cattle had been tendered on the 20th of May or on June 1st, Shelton could have refused to accept them, because not tendered on some day *between* the days named in the contract. It is usual to use the word "inclusive" when the dates named are to be included. The bond is not entitled to grace, because our statute allows grace only on bills of exchange and promissory notes. We therefore conclude that the bond sued on matured at the close of the 31st day of May, and that it was mature on June 1st, when the settlement and payment was made.

It does not appear from the petition that the money, $3050, was paid at any other place than the one named in the bond, though we are inclined to think that the petition should have shown affirmatively that it was not, inasmuch as it was incumbent on the pleader to show that the settlement and payment were not made at a place that would make the settlement binding. It appears from the allegations of the petition that the contract, as well as the bond sued on, and "the void receipt written upon said bond," are all in the possession of the defendant Jackson, and he is herein notified to produce them, and from this allegation we conclude that when the settlement was made and the $3050 paid by Jackson, the receipt for it in full settlement of the bond was written on the bond, or rather across the face of the bond, as shown in the copy attached to plaintiff's petition as exhibit B, and the bond thus receipted and canceled was delivered up to Jackson.

The learned counsel for appellant have based this action upon the old rule that the payment and acceptance of a sum of money less than the amount of indebtedness due, in full satisfaction of the debt, is without consideration, and does not bar the creditor's suit to recover the balance. This is an old established rule of the common law, both in this country and in England, but in the writer's opinion it has not only outlived its usefulness, but is positively detrimental to the rights of the people to manage their business as they please, and dispose of their claims, demands, and choses in action in any manner and for any amount their best judgment may dictate and the exigencies of their business relations may demand.

In 1851 the Supreme Court of Ohio said: "It was very early settled

as a rule of the common law that the payment of less than the sum due upon a liquidated demand, although agreed to be received in full satisfaction, could not be insisted upon as such, because there was no valuable consideration to uphold the agreement to relinquish the balance. But if the party to whom the money was coming executed a release under seal, for the same debt, he was effectually barred, although he should have received nothing upon it. The rule and the reason were purely technical, and often fostered bad faith. The history of judicial decisions upon the subject has shown a constant effort to escape from its absurdity and injustice." Harper v. Graham, 20 Ohio, 115.

The court then proceeded to emasculate the rule in the strongest kind of reasoning and language, but fortunately for the rule and unfortunately for the good people of Ohio, the case was decided as coming within one of the exceptions to the rule; that is, the payment was declared to have been made in Arkansas when the creditor lived in Ohio and the money was payable in Ohio. This, it was said, satisfied the rule, and it was permitted to continue its existence in that State.

In 1891 Judge Potter, in delivering the opinion of the New York Court of Appeals in the case of Jaffray v. Davis, 26 Northeastern Reporter, 352, 124 New York, 164, reviewed the history of the rule from its origin in England, in 1602, to the date of the decision, and showed that the courts of this country, as well as of England, "have rarely failed, upon any recurrence of the question, to criticise and condemn its reasonableness, justice, fairness, or honesty, yet have declined to overrule it." They have almost always found some way of engrafting an exception upon it, where they could not bring the case under consideration within some exception already found by some other court. That learned judge shows how utterly and entirely the cases decided and quoted from by him have undermined the rule itself and the reason thereof, until the only wonder to the writer is that courts of last resort do not overrule it entirely, as being opposed to the rights and best interests of the people, as was done by the Supreme Court of Mississippi in 1897. Clayton v. Clark, 37 L. R. A., 771.

The rule seems to be based upon the decision of a case in England known as Pinnel's case, where, in 1602, as stated by Sir Edward Coke, it was laid down by all the judges of the Common Pleas "that payment of a lesser sum on the day, in satisfaction of a greater, can not be any satisfaction for the whole, because it appears to the judges that by no possibility a lesser sum can be a satisfaction to the plaintiff for a greater sum." 5 Coke, 117a; Cumber v. Wane, 1 Smith's Leading Cases (9th Am. ed.), 606.

This powerful reasoning is found in a case where the defendant Pinnel pleaded that before the maturity of the bond he was sued on the plaintiff had accepted the lesser sum agreed upon between the parties in full satisfaction of the original debt, and Chief Justice Woods, in delivering the opinion of the Supreme Court of Mississippi in the case of Clayton v. Clark, supra, commenting on this case, says: "Now all the

authorities, American and English, including Coke himself, agree that this was a good defense, and that the plaintiff was bound by it, if the defendant should properly plead it to a suit for the entire original debt. But the hapless Pinnel, in that remote period when courts were almost as jealous for the observance of technical rules of special pleading as for the execution of justice according to right, was adjudged to pay the whole debt, the plaintiff having judgment against him because of his 'insufficient' pleading; 'for,' says Coke, 'he did not plead that he had *paid* the £5 2s. 2d. in full satisfaction (as by law he ought), but pleaded the payment of part generally and that the plaintiff *accepted* it in full satisfaction.' However amusing and absurd this may appear to us, it was the point decided in Pinnel's case; and the question before us was not only not decided, but it was impossible that it should have been. There Pinnel pleaded payment of the lesser sum before the date of the maturity of the greater sum named in the bond, and its acceptance by the creditor in full satisfaction; and he lost, unhappy wretch that he was, born two or three centuries too soon, and not knowing the difference betwixt legal tweedledum and legal tweedledee, because he pleaded a part of the greater original sum, and that the plaintiff *accepted* it in full satisfaction, and did not plead that he *paid* it in full satisfaction."

Yet this dictum in Pinnel's case seems to have satisfied the English courts for 115 years, without being questioned, when Lord Blackburn, delivering the opinion of the House of Lords in Foakes v. Beer, L. R. 9 App. Cas., 605, held "that a lesser sum can not be a satisfaction of a greater sum, but the gift of a horse, hawk, or robe in satisfaction is good," quite regardless of the amount of the debt. Goddard v. O'Brien, (Q. B. Div.), 21 Am. Law Reg., 637, and notes. This decision of this grave body of lords and justices of England, if it fails to enlighten us on anything else, probably throws a glimmering ray on the value of horses, hawks, and robes back in that olden time, and makes it very clear why, a little earlier, as the immortal Shakespeare relates in his tragedy of Richard III., that bloody son of York offered on Bosworth Field, at public outcry, his kingdom of England for a horse and found no taker.

Our American courts have followed this dictum with reluctance, however, and so we find it laid down by the Supreme Court of Connecticut that, "although the claim is a money demand, liquidated and not doubtful, and it can not be satisfied with a smaller sum of money, yet if any other personal property is received in satisfaction it will be good, no matter what the value." Bull v. Bull, 43 Conn., 455. See also, to the same effect, Brooks v. Moore, 67 Barb, 394; Dimmick v. Sexton, 125 Pa. St., 334; Very v. Levy, 54 U. S. 13 How., 345; Neal v. Handley, 116 Ill., 418, 56 Am. Rep., 784; Overton v. Connor, 50 Texas, 113; 2 Cal., 494.

So, a gold bar it has been said, worth $100, will discharge a note of $500, while $450 in gold coin of the United States will not. So, if the original debt is non-negotiable, though liquidated (as in this case), the acceptance of a check or negotiable note in full satisfaction, though for

less than the debt, is good, and will discharge the debt. Sibree v. Tripp, 15 Mees. & W., 26; Goddard v. O'Brien, L. R. 9 Q. B. Div., 37; Pulliam v. Taylor, 50 Miss., 251.

So, if the creditor accept the note of a third person for a less sum than the original debt due him in full satisfaction; or if he accept his debtor's note with security for a less sum than the original debt, and in full settlement thereof, the debtor may plead these in bar of recovery of the original debt or of the balance. LePage v. McCrea, 1 Wend., 164, 19 Am. Rep., 469; Kellogg v. Richards, 14 Wend., 116; Boyd v. Hitchcock, 20 Johns., 76; 11 Am. Dec., 247; Wells v. Morrison, 91 Ind., 51; Wilks v. Slaughter, 49 Ark., 235; Pulliam v. Taylor, 50 Miss., 251; Jaffray v. Davis, 11 L. R. A., 710, 124 N. Y. 164.

It is clear from these last cases that if Mr. Jackson had given his negotiable promissory note for the $3050, or even less, insolvent though he may have been, as alleged, and Mr. Shelton had accepted it in full settlement of the $4500 bond, this would have been perfectly good in law, and would have discharged the bond in toto, especially if he had secured the signature of a straw man as surety thereon, or had secured the note by a mortgage on a dying cow. Or if Mr. Jackson had understood the difference 'twixt legal tweedledum and legal tweedledee, and instead of pulling the money out of his pocket and handing it over to Mr. Shelton, he had stepped to the bank and deposited it therein, and then and there given Mr. Shelton a check for it, in full satisfaction of the debt, and Mr. Shelton had so accepted the check, the discharge of the bond would have been complete.

So, payment of less than the amount due, if received in satisfaction of the whole debt, is a good discharge, if made before the debt is due, or at a different place than the one stipulated. Bowker v. Childs, 3 Allen, 434; Smith v. Brown, 3 Hawks, 580; Pope v. Tunstall, 2 Pike, 209; Jones v. Perkins, 29 Miss., 139; Jones v. Bullitt, 2 Litt. (Ky.), 49; Ricketts v. Hall, 2 Bush (Ky.), 249; Schweider v. Lang, 29 Minn., 254, 12 N. W. Rep., 33; Brooks v. White, 2 Met. (Mass.), 283; Grant v. Hughes, 96 N. C., 177; Rose v. Hall, 26 Conn., 392, 68 Am. Dec., 402. For a general discussion of the subject, see notes to Fuller v. Kemp, 20 L. R. A., 785.

In Watson v. Elliott, 57 New Hampshire, 511, it was held: "It is enough that something substantial, which one party is not bound by law to do, is done by him, or something which he has a right to do he abstains from doing, at the request of the other party, is held a good satisfaction." So, in Gray v. Barton, 55 New York, 68, where a debt of $820 on book account was satisfied by the payment of $1, by calling the balance a gift, though the balance was not delivered except by fiction, and the receipt was in the usual form and was silent upon the subject of a gift; and this case was followed and referred to in Ferry v. Stephens, 66 New York, 321. So, it was held in Mitchell v. Wheaton, 46 Connecticut, 315, that the debtor's agreement to pay $150, with the costs of the suit, upon a liquidated debt of $299, satisfied the principal debt.

We understand that the rule has always been that, where the debt was released under seal, it was a good satisfaction. In Gordon v. Moore, 44 Arkansas, 355, the Supreme Court says: "We conclude, therefore, that an agreement by a creditor to accept a smaller sum in satisfaction of a debt, carried into execution by receipt of the money, and the execution of a formal and positive instrument of release, with all other acts essential to an absolute relinquishment of his right, is a valid and irrevocable act." The learned judge who rendered the opinion said: "Certainly there must be some mode by which one may dispose of that which is his own, as his generosity or his sound views of his best interests may prompt. It is often very desirable that he should have that privilege. It is done in business every day. Collections can not always be made promptly by law. The best men are prone to amicable adjustments, and the exigencies of business often require it. It would be hard and unreasonable if a creditor pressed for money might not say to an embarrassed or reluctant debtor, 'Pay me a part, and I will release the balance.' He is cut off from doing that, in many cases, by the rule as it now stands, but the rule is a hard one, based upon purely technical reasoning."

An examination of the authorities cited will show that in nearly all of them the courts have realized the absurdity and inconvenience of the rule as applied to the affairs of this day and time and in this country, and they have sought to escape from its effects by either finding or forming exceptions to it, except in the Mississippi case, where a majority of that court preferred to abrogate the old rule rather than place their decision under one of the well established exceptions. The writer, if he had the power, would do what the Mississippi Supreme Court did,—overrule the rule,—because in his opinion a man is entitled to do as he pleases with his notes, bonds, and accounts, and if he wishes to avoid litigation or delay, or the danger of loss from insolvency of his debtor, or from his taking the bankrupt law, or for any other reason, or of his own generosity or caprice he thinks it to his interest or pleasure to settle a claim against a debtor for less than the amount due, he has the right to do so, and having done so, he should be held to his contract, if executed according to its terms, in the absence of fraud, accident or mistake sufficient in a court of conscience to set it aside.

But we are not driven to the necessity of overturning the rule in this case, for we are quite clear that, under the facts stated in the petition, we are enabled to add to the long list of exceptions to the rule one which will probably be as useful as any yet found, and that is the alleged insolvency of the makers of the bond.

We do not think the allegations of the petition are sufficient to show any legal duress whereby appellant was compelled to execute the agreement in full settlement of the bond. It is shown in the petition that the settlement was made with appellant's attorney, A. P. Young, and that appellant had been informed that such a settlement would not be binding on him nor discharge the bond; yet he authorized his attorney to

make the settlement and to accept the $3050 and receipt the bond as settled in full, which the attorney did, but of course with a mental reservation; but there was no duress or fraud alleged at all sufficient in law to avoid the settlement, if it was otherwise valid.

In our solution of the question, we attach no importance to the allegation that the $3050 was the plaintiff's money, and was being held by Jackson as plaintiff's agent or trustee. It was in Jackson's power to use it the same as if it were his own, and was as much beyond the reach of plaintiff as any other of Jackson's money. In fact, we think that, while the allegations of fraud and duress are not sufficient to avoid the settlement and discharge of the bond, they show a consideration for the same, in that they do show that by the transfers of their property the principal and surety on the bond had become insolvent, and that it was apparent to the plaintiff that, if he did not accept the $3050 cash, he would probably never get anything, or if he did it would be at the end of a long, vexatious, and expensive law suit, and probably more than one. We are therefore of the opinion that, under such circumstances, there was a substantial benefit accrued to the creditor in obtaining the immediate possession of this money without any cost or delay, and that this settlement of such an uncertain matter, arising out of the insolvency of the debtors, and the receipt of the sum agreed on, would be a sufficient consideration to support his release of the balance of the debt.

In the Jaffray-Davis case Judge Potter says: "It has been held in a number of cases that, if a note be surrendered by the payee to the maker, the whole claim is discharged and no action can afterwards be maintained on such instrument for the unpaid balance," citing Ellsworth v. Fogg, 35 Vermont, 355; Kent v. Reynolds, 8 Hun, 559.

In the Ellsworth-Fogg case, supra, the Supreme Court of Vermont show how utterly unreasonable the old rule is, but find an exception upon which to base their decision, and say: "We think the surrender of the notes by the owner to the maker may well be put upon the same ground as a release,—as being an act of the highest significance and clearest import to show the deliberate and well understood agreement of the parties. It is their agreement executed,—a release in practical operation. It is free from liability to mistake or fraud. The deliberate surrender of notes by the owner to the maker, to be canceled, is an act which no man of prudence, or of the least knowledge of business, would do, unless he intended to discharge the debt."

In the case at bar, Shelton, by his attorney, canceled the bond by writing a receipt in full settlement across the face thereof before surrendering it, and then delivered it to Jackson, showing, to Jackson at least, an unmistakable intention of discharging it. See, also, Gates v. Steele (Conn.), 20 Atl. Rep., 474; Aborn v. Rathborn, 54 Conn., 444, 8 Atl. Rep., 677; Silvers v. Reynolds, 17 N. J. L., 275; Draper v. Hitt, 43 Vt., 439, 5 Am. Rep., 292; Murray v. Snow, 37 Iowa, 410; Norman v. Thompson, 4 Exch., 755; Young v. Power, 41 Miss., 197; Clark on Contracts, p. 184, et seq.

In Draper v. Hitt, supra, the defendant, pursuant to an agreement between him and plaintiff, had executed his note for $40 and delivered it to plaintiff, who received it in satisfaction of a note he held against defendant for $60, and at the same time surrendered the old note for the larger amount. The court held that the surrender of the note to the maker to be canceled was equivalent to a discharge and release, and that there was a sufficient accord and satisfaction of the debt.

So, in Murray v. Snow, supra, the debtor made a verbal contract to pay, and the creditor agreed to accept 50 per cent in full satisfaction and discharge of the debt, which amount was paid by the debtor, who obtained the creditor's receipt in full indorsed upon the back of the old note, which was handed to him, and from which he tore his signature. The court, in an action for the balance of the debt, held that the claim was barred by the settlement.

From the foregoing opinion, it is easy to infer what the writer would do to the rule if he had a chance, and his purpose in prolonging this opinion is to show the bench and bar of Texas how utterly unreasonable and unjust to contracting parties the rule is become, and how like a fetich the courts of this country have bowed down and worshiped around the old dictum out of idolatrous reverence for precedents and because it smells old and musty, though it has long enough retarded the progressive young genius of American commerce, and, in fact, it never should have been born. It is a rule now more honored in the breach than the observance, and the writer hopes that when our Supreme Court gets even as good an opportunity as this, it will bury its skeleton so deep that no lawyer will ever scent it out and offer it as authority in Texas again, as he would have done in this instance if he had had the power.

We think the court did not err is sustaining the defendants' demurrer to the plaintiff's petition and dismissing his suit, and the judgment of the District Court is therefore affirmed.

*Affirmed.*

Writ of error refused.