### TEXAS MUT. LIFE INS. ASS'N v. YOUNG.

### No. 2309.

Court of Civil Appeals of Texas. Waco.

April 10, 1941.

Rehearing Denied May 8, 1941.

Richey, Sheehy & Teeling, of Waco, for appellant.

Orville M. Jobe and A. D. Mabray, both of Waco, for appellee.

HALE, Justice.

Appellee, Mrs. Kate Young, instituted this suit against appellant, Texas Mutual Life Insurance Association, for the recovery of $961.47 alleged to be the balance due her as beneficiary under the terms of a policy issued on the life of her deceased husband. Appellant is a mutual association operating under the provisions of Article 4859f, Vernon's Annotated Texas Civil Statutes. On April 3, 1930, it admitted appellee's husband into "Group E" of its membership, and thereafter, on July 1, 1935, it placed the insured in "Group F" and issued a new policy to him for the maximum sum of $2,000, with appellee designated therein as beneficiary. The insured died on May 1, 1939, while the latter policy was in full force.

On May 15th, after receiving proper notice of the claim, appellant informed appellee by letter that Group F had been dissolved "due to the fact that the premium income from a single assessment has been insufficient to meet the requirements of the law." It also advised in such letter that it had set aside the sum of $2,077.06, being the equivalent of the premium collection from the last previous month, and had prorated said sum to the unpaid claims in Group F as of the date of dissolution. It enclosed draft payable to the order of appellee in the sum of $1,038.53, which recited that the same was in full payment of all claims due under the policy in question, and requested appellee to receipt the policy and attach to the draft and deposit for clearance. Appellee retained the draft until June 29, 1939, when she endorsed the same, signed a receipt on the policy for the amount of the draft "in full payment of all claims under this policy," and forwarded the draft and receipted policy through banking channels for collection, and the draft was paid by appellant.

The case was submitted to a jury on three special issues, in response to which the jury found that on June 29, 1939, appellee was a person of unsound mind; that the sum of $2,077.06 would have been collected by appellant if an assessment had been levied under the terms of the policy on members in Group F for the death of the deceased; and that there was no bona fide controversy between the parties prior to June 29, 1939, as to the amount of money appellee was entitled to receive by reason of the death of her husband. Thereupon the court rendered judgment in favor of appellee for the balance claimed by her.

Appellant asserts by various assignments that the trial court should have instructed a verdict in its favor because (1) the sum of $1,038.53 was the full amount appellee was entitled to receive under said policy, and if not (2) then there was a bona fide dispute between the parties as to the amount payable, and the acceptance by appellee of the sum paid, under the circumstances shown, constituted an accord and satisfaction, and (3) because the issue of unsound mind was not properly raised

either by the pleadings or the evidence. We shall discuss these contentions briefly in the order named.

The policy sued upon was endorsed on the back thereof: "Amount $2,000.00." It provided on its face in the insuring clause that the Association "agrees to pay Two Thousand Dollars, which is the maximum amount of this policy upon due proof of death, * * * subject to the conditions of this policy and the provisions of the By-laws of the Association." The only condition in the policy with respect to any limitation upon the maximum amount payable thereunder was as follows: "The obligation of the Association to make payment of any sum or sums specified in its policy contract, or supplemental contract, shall be the amount realized from the net mortuary collection of one monthly premium from the membership of this Group, but in no event to exceed the face amount of this policy. In accordance with the laws of the State of Texas, under which it operates, the Association is required to set aside the net mortuary portion of its premium income for the payment of its claims. In the event it becomes necessary for the payment of claims or to replenish the mortuary fund, payments in addition to the regular premiums stated herein may be required." The regular premium stated in said policy was $4 payable on or before the 30th day of each month.

When appellee proved that her husband had died while the policy was in full force, and that she had furnished due proof of his death to the Association, she thereby made out a prima facie case of liability for the maximum sum specified in the policy, and if the facts were such as to reduce the amount payable thereunder to any sum less than the maximum provided for, then the burden rested upon appellant to establish such facts as an affirmative defense in mitigation of the measure of recovery otherwise applicable. Amarillo Mutual Benev. Ass'n v. Franklin, Tex.Com.App., 50 S.W. 2d 264, and numerous cases there cited; Texas Mutual Life Ins. Ass'n v. Wilson, Tex.Civ.App., 19 S.W.2d 591, error dismissed; Mutual Protective Association of Texas v. Woods, Tex.Civ.App., 57 S.W.2d 918; Id., 128 Tex. 9, 94 S.W.2d 1149; Castel v. First States Life Co., Tex.Civ. App., 122 S.W.2d 1113.

The by-laws of the association were not offered in evidence. There was no evidence of any kind as to the portion of the assessments allotted by appellant to the mortuary fund of the membership in Group F in accordance with the requirements of section 9 of Article 4859f of the statutes and referred to in the policy contract above quoted, or as to the amount of the assessments levied against each of the various members in such group. Appellant's secretary was the only witness who testified to any facts showing, or tending to show, the amount realized from the net mortuary collection of monthly premiums from the membership of Group F. We have carefully reviewed his testimony and we are of the opinion that the same, even though it be accepted as absolutely true, was not sufficient, when considered in connection with the quoted policy provisions, to establish conclusively the facts necessary to limit the amount of appellant's liability to the sum previously paid by it to appellee. Furthermore, we cannot say that the trial court or the jury was bound to accept the uncorroborated parol testimony of appellant's secretary, regardless of whether such testimony was or was not sufficient to establish facts necessary to constitute a legal defense against the balance sued for. Therefore, we must overrule appellant's contention that the sum previously paid to appellee was the full amount due her under said policy.

And since we cannot hold as a matter of law, either under the evidence or the findings of the jury, that the sum of $1,038.53 was the full amount due appellee, so also for the same reasons we cannot say that the amount of appellant's liability was unliquidated, or that the same was any sum less than the maximum specified in the policy contract. While appellant's secretary testified in detail as to the mortuary receipts and disbursements relating to Group F for a period of six months prior to its attempted dissolution on May 9th, he also testified that immediately after such dissolution all the surviving members of that group were given the privilege of being placed in Group I; that about eighty per cent of such membership accepted the proffered transfer and that the mortuary fund available for the payment of claims in Group I at the time of the trial in December, 1939, was about $68,000; that the sum of $2,077.06 was the net mortuary collection of premiums in Group F for the month of April, 1939. The only evidence as to the source from which appellant received

the $2,077.06 referred to in its letter of May 15th was the testimony of its secretary to the effect that "we have a little money on hand now and then and I used it. Every now and then we have a little money on hand and we loan it to a group, if we want to, and when a group picks it up, we take it out."

It is not contended that the amount of appellant's legal liability was any sum less than that which was actually paid to appellee. We cannot say, under the evidence before us, and in the face of the findings of the jury to the contrary, that there was ever any bona fide controversy between the parties either as to appellant's liability or as to the amount thereof. Therefore, in the absence of any consideration for the claimed release of a balance due on a liquidated demand, and in the absence of any good faith dispute concerning the same, we overrule appellant's contention that its previous payment, under the circumstances shown, constituted an accord and satisfaction between the parties. Franklin Ins. Co. v. Villeneuve, 25 Tex.Civ.App. 356, 60 S. W. 1014; Business Men's Assurance Co. v. Bradley, Tex.Civ.App., 275 S.W. 622; Ford v. Glaze, Tex.Civ.App., 60 S.W.2d 898; Chicago Fraternal Life Ins. Ass'n v. Herring, Tex.Civ.App., 104 S.W.2d 901; Texas Guaranty Life Co. v. Seale, Tex. Civ.App., 143 S.W.2d 147.

The foregoing conclusions render appellant's third contention immaterial, so that no useful purpose would be served by expressing our views with respect thereto. Being of the opinion that no prejudicial error is shown by the record before us, all of appellant's assignments are overruled, and the judgment appealed from is affirmed.