**ALEXANDER et al. v. STOCK YARDS NAT. BANK OF FORT WORTH et al.**

No. 14214.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 26, 1941.

Rehearing Denied Oct. 31, 1941.

998

Herman Glosserman, of San Antonio, and W. H. Lipscomb, of San Angelo, for appellants.

W. C. Kirk, of Chicago, Ill., and L. J. Wardlaw and Brantley Ross Pringle, both of Fort Worth, for appellees.

SPEER, Justice.

W. S. Alexander, W. G. Alexander, John Alexander and Ella G. Alexander, a feme sole, to whom we shall refer occasionally as the Alexanders and later as appellants, instituted this suit against Stock Yards National Bank of Fort Worth, Texas, and Fort Worth Cattle Loan Company, both corporations, to which we will sometimes refer as defendants and at other times as appellees, to recover damages in the sum of $94,000, alleged to have been sustained because of the breach of a contract by defendants to furnish money to the Alexanders over a period of months, upon which to operate a certain ranch by the Alexanders and for an alleged fraudulent representation by the defendants that they had the right to and had declared their indebtedness due and a threat by them to foreclose a lien on securities.

The numerous transactions between the parties, out of which this controversy grew, have complicated the record to such an extent that it is difficult for us to make an intelligent statement of the contentions of the respective litigants.

Summarizing the pleadings as briefly as possible, it will suffice to say that the Alexanders alleged they were engaged in the ranching business in Mason and Kimble Counties on and prior to August 1, 1933; they had on the ranch approximately 22,-850 head of sheep, 3,250 goats and about 1,033 head of cattle. That they owed defendants approximately $216,000, payment of which was secured by liens on the above-mentioned livestock, along with other sheep, goats and cattle on another ranch located in Brown County, Texas; that prior to filing this suit (November 1, 1935) they had sold 925 head of cattle in Okla-

homa and paid to the defendants on the indebtedness $60,000. That on or about August 1, 1933, defendants, acting through W. L. Pier, their common president, agreed to supply the Alexanders with funds necessary to enable them to continue said ranching business, conducted upon what was known as the James River Ranch in said Mason and Kimble Counties, during the next year. That if defendants had carried out their agreement to so finance the Alexanders, they would have continued to operate said ranch and would have kept their said livestock until the following March or April, when they could and would have sold their said property for $250,000. It was further alleged that shortly before November 9, 1933, the defendants, acting through their said president, notified the Alexanders that they would no longer furnish funds for operation of the ranch and that under the terms and provisions of the chattel mortgage held by defendants, they had the legal right to declare their said debts all due and payable and that they had exercised their option to do so; that unless the Alexanders should immediately deliver to G. R. and J. E. White all of their said stock located on said James River Ranch at and for the then range values thereof, defendants would proceed to foreclose their mortgage liens. That the right asserted by defendants to declare their debt due and foreclose their said liens at that time was false and made for the fraudulent purpose of requiring the Alexanders to sell their said property at the then range value and deprive them of the enhanced value thereof to accrue between that time and the following March or April, which enhanced value was alleged to be $94,000. That defendants promised that if the Alexanders would deliver their said livestock to the Whites at the then range value, credit would be given them by defendants upon the indebtedness they owed, and defendants would release all of plaintiffs except W. S. Alexander from liability for any deficit on the entire indebtedness (except an item of approximately $10,000, which was secured by properties in Brown County). That defendants knew said representations were false when they made them and that they were made for the purpose of deceiving plaintiffs; that they did deceive plaintiffs by said false and fraudulent representations. That because of defendants' refusal to further finance them and because of said false and fraudulent representa-

tions of defendants to the effect that they had the right to declare their indebtedness due, and being ignorant of their own rights in the premises and relying upon said false and fraudulent statements of defendants, plaintiffs entered into a contract with the Whites to deliver to them all of the livestock on the James River Ranch (except some which were not to be included) for the agreed price of $146,000. This amount was turned over to defendants for credit when the sale was finally consummated. That the price for which the livestock were sold and delivered to the Whites was the then fair market range value thereof.

Defendants answered by general denial and by several special pleas. Among the special defenses set out were:

1. That on November 9, 1933, the Alexanders were indebted to defendants in the sum of approximately $290,386, all evidenced by notes listed by the pleader in an exhibit attached and made a part of the answer; that said note were secured by chattel mortgage liens on livestock in Oklahoma and Texas, and a deed of trust lien on about 1,150 acres of land in Brown County, Texas; copies of the deed of trust and the several chattel mortgages were likewise attached to the answer and made a part of it.

2. That plaintiffs (the Alexanders) were all insolvent in that all the property possessed by them was not of a reasonable market value equal to the indebtedness owing to defendants.

3. That each of the the chattel mortgages held by defendants contained a provision as follows: "If the livestock or security, or the value thereof, be impaired by neglect, depreciation in value, or otherwise, at any time, upon the failure to pay said note or notes or liability (secured thereby) * * * then in either event the whole of the indebtedness owing may become due and payable instanter at the option of the grantee (defendants)." That more than ninety days prior to said November 9, 1933, the livestock and the land had been impaired by neglect of the Alexanders, in that the sheep had become infested with stomach worms and more than 5,000 had died or disappeared and that all of said securities were not of sufficient value to pay the indebtedness secured thereby.

4. That because of said impaired values, in June or July, 1933, defendants exercised their option to mature said indebtedness and notified plaintiffs to that effect, and requested them to ·sell said property and apply the proceeds towards liquidating their obligations; that they placed plaintiffs in contact with G. R. and J. E. White, who were able and willing to buy said property. That plaintiffs were unwilling to sell the Brown County land but agreed to make a sale of the livestock on the James River Ranch, provided that when the purchase price should be applied on defendants' notes, the Alexanders would be released from liability on the unpaid portion · of said indebtedness, the land in Brown County should be released from the lien theretofore existing on it, they should be permitted to retain the livestock on the Brown County ranch so that they might be pledged as security for a stipulated indebtedness to defendants, and that W. S. Alexander be released from personal liability on a series of notes then owing° by him to defendants. Allegations were made that all of said conditions were accepted by defendants. That said agreement was reduced to writing, a copy of which instrument was attached to the pleading as a part thereof. That defendants had fully performed said contract and surrendered to plaintiffs all of said notes, which were agreed to be canceled, and attached to the answer a list of the many notes, showing their dates and maturities.

5. That other livestock in Oklahoma which were pledged to defendants to secure parts of said indebtedness were sold in 1934, and the proceeds turned over to defendants and credited on the debts they secured, and that after all credits were allowed, $121,190 of the entire indebtedness remained unpaid. That thereafter W. S. Alexander executed his notes to defendants in a sum aggregating $64,190, with a stipulation therein that he should not be held personally responsible for payment but that defendants would look solely to an insurance policy for $100,000, which had no surrender value, on the life of the maker; that said policy of insurance has since lapsed and has no value.

6. That by the full and complete performance of all said contracts and agreements, accord and satisfaction was completed and that plaintiffs were now estopped to assert their alleged cause of action.

Their prayer was in the usual form that plaintiffs take nothing and that defendants recover their costs.

Plaintiffs replied with special exceptions to the pleas of accord and satisfaction and of estoppel. The overruling of the exceptions is made a basis for assignments of error.

The case was tried to a jury and the verdict, in so far as is necessary to state, found: (1) defendants' president, with authority from defendants, agreed to finance plaintiffs, as contended by them; (4) the president, about October 23, 1933, notified plaintiffs that defendants would not further finance them; (5) at the same time the president told plaintiffs defendants had a right to foreclose against the securities and would do so unless plaintiffs sold the property to the Whites; (6) the representations made by the president to the effect that defendants could foreclose induced the Alexanders to execute the contract of November 9, 1933 (by which the sale of the stock on James River Ranch to the Whites was made and the notes and securities released); (9) the Alexanders did not execute the settlement agreement of November 9, 1933, freely and voluntarily, with intent of settling all outstanding indebtedness and matters then existing between the parties; (12) plaintiffs would have waited until about April 1, 1934, to market their stock, at which time they would have been worth $205,263.25; (14) it would have cost plaintiffs $18,331.21 to have held their livestock from November 15, 1933, until April, 1934 (when they intended to market them); (15) plaintiffs' total indebtedness to defendants on November 9, 1933, was $244,939.84; and (16) the additional indebtedness incurred by plaintiffs to defendants after November 9, 1933, was $4,010. Judgment was entered that plaintiffs take nothing, and from that judgment they have appealed.

Appellants (plaintiffs below) present three points upon which they seek a reversal. They will be discussed in their order.

Under the first point raised, plaintiffs seek a reversal because the court overruled their special exception which reads: "Plaintiffs specially except to all that portion of defendants' said answer which reads as follows: 'That these defendants have complied with all the terms and conditions imposed upon them, have released the plaintiffs from liability upon the notes set out in Exhibit A, have released the land in Brown County covered by the deed of trust, Exhibit C, and that complete accord and satisfaction of all matters of which plaintiffs complain, has been made.'"

■ Appellants' contention as disclosed by their briefs seems to be that there were no facts alleged by defendants which could be construed to mean an accord and satisfaction of their claim for the damages sought to be recovered; that they sustained damages as a result of defendants' failure to carry out their contract to finance them during the year from August 1, 1933, to July 31, 1934, and for the fraudulent representation of defendants that they had a right under their mortgage lien contracts to mature the notes, and that the losses sustained by plaintiffs had not accrued and were not satisfied by the terms of the sale of the livestock to the Whites, nor by the subsequent contracts between appellants and defendants, by which the formers' notes and securities were surrendered and appellants released from personal liability on the deficit. They cite well-recognized authorities which prescribe the test of the sufficiency of pleas of accord and satisfaction. Among the cases cited is Gulf, C. & S. F. Ry. Co. v. Gordon, 70 Tex. 80, 7 S.W. 695, 697, where it is said: "To constitute an accord and satisfaction it must appear that the appellee [appellants here] agreed to receive something in place or stead of the unliquidated sum which he conceived himself entitled to receive from the appellant [appellees in this case] on account of his injuries, and that this had been paid." Defendants' answer, together with the numerous exhibits attached thereto, rendered it rather lengthy and very comprehensive, covering the various transactions had between the parties. Such pleadings were sufficient to entitle defendants to offer proof in support thereof; but measured by the rule laid down in the above-cited case it was insufficient to constitute a plea of accord and satisfaction, if considered for that purpose only. The added expression, "that complete accord and satisfaction of all matters of which plaintiffs complain, has been made", was a conclusion of the pleader and added nothing to the force of what had been said, toward making it such.

■ It will be noted that the exception urged did not complain of the answer as a whole upon the ground that it presented no

defense to appellants' claim, but that it was the quoted part which was challenged because it constituted a conclusion. That part of the pleading set out in the exception, which stated defendants had complied with the terms of the contracts thereinabove set out, and further showing in what way they had complied was proper in view of what had preceded it. If the exception had been leveled alone at the portion wherein defendants stated that complete accord and satisfaction to plaintiffs' claim had been made, it would have been good; but if the court had sustained it as presented he would have erroneously stricken a material allegation of defendants; the court could only rule upon the exception as presented and, framed as it was, no error was committed by overruling it.

■ The second point relied upon by appellants for a reversal is that the court erred in overruling their special exception to defendants' plea of estoppel. As indicated in the early part of this opinion, defendants alleged many defensive matters supporting them by attached exhibits signed by plaintiffs. In the last paragraph preceding the prayer, it was alleged substantially that all the foregoing matters were, by references thereto, again plead, and for the reasons shown, plaintiffs were estopped to assert their alleged cause of action, in that defendants had complied with all the terms of the contracts set out, released plaintiffs from further liability on any deficit remaining unpaid, released W. S. Alexander from personal liability on his series of notes for $64,190, canceled and surrendered to plaintiffs all of the notes included in the list attached as an exhibit and released the Brown County land from the deed of trust lien. That the concessions above set out would not have been made if the contract of November 9, 1933, plead by defendants had not been made. The action of the trial court in overruling the special exception presents no error. As we view the record before us, the rulings of the court on the two exceptions above discussed are of little significance, because the judgment found support upon a different theory, which we shall later demonstrate.

The third and last point relied upon by appellants is a contention that the court committed fundamental error in, (1) submitting Special Issue 15, (2) submitting Special Issue 16 and (3) in entering judgment for defendants contrary to the ver-

dict of the jury. All of the foregoing points are presented in a single proposition, and while there are three separate acts of the court complained of, they are said to present fundamental error, which, if true, we should discover without the aid of counsel. We will therefore consider the suggested fundamental errors without respect to the manner in which they are presented.

■ Appellants contend that there were no pleadings upon which to base the submission of Special Issues 15 and 16. No objections were made by appellants to their submission and no complaint is made in the motion for new trial, because they were submitted. Special Issue 15 inquired as to the amount of the total indebtedness of the Alexanders to defendants on November 9, 1933; the answer was $244,939.84. Special Issue 16 inquired what amount of indebtedness was incurred by the Alexanders to defendants subsequent to November 9, 1933; the answer was $4,010.

We repeat, appellants had plead that they owed defendants approximately $216,000 on August 1, 1933, at a time they claimed defendants agreed to refinance them for the ensuing year. The defendants alleged that plaintiffs owed $290,386 on November 9, 1933 (the date inquired about in the Special Issues). Furthermore, in connection with that allegation, appellees attached to their pleading an exhibit purporting to show the notes owing by appellants at that time. The exhibit discloses a large number of notes showing the date of execution and maturity of each. From the information disclosed it is apparent that many of the notes listed were renewals of others shown to have matured earlier. Among the notes so listed are three, shown to have been executed subsequent to November 9, 1933, which aggregate $4,010, the amount found by the jury to have been the amount of indebtedness incurred subsequent to November 9, 1933. We conclude that the pleadings raise the matters inquired about in the two offending issues, and no fundamental error is presented by their submission to the jury.

■ Another subdivision of the point urged is that the court committed fundamental error in entering the judgment against appellants because it was contrary to the verdict of the jury. We overrule this contention, for the reason we think the verdict compels the entry of the judgment.

Throughout appellants' brief, they frequently assert that their right of recovery was for the damages sustained because of appellees' breach of their contract to furnish funds with which appellants could continue their ranching operations during the ensuing year, and for the wrongful and fraudulent declaration of appellees that their debt had matured under an option given them by the terms of the chattel mortgages held.

The jury found upon competent evidence that appellants owed defendants $244,939.-84 on November 9, 1933. The pleadings of all parties, as well as the undisputed testimony, show that the James River Ranch livestock were sold by appellants to the Whites for $146,000, and this amount was paid to appellees on their notes held against appellants. The jury verdict finds that if appellants had been permitted to hold their livestock until April, 1934, as they intended to do, their value would have been $205,-263, and that it would have cost appellants $18,331 to have so held the stock before selling in April, 1934, making the net value at the last-mentioned date $186,932. Taking the amount found by the jury to be owing on November 9, 1933, and deducting $19,-095 admittedly paid from sale of cattle in Oklahoma subsequent to November 9, 1933, leaves appellants' indebtedness at approximately $225,844. It must follow as a matter of fact that even if appellants had been permitted to retain their livestock until April, 1934, and to sell them at the price the jury found they would have brought, the amount they would have received at that time would not have paid the amount owing to appellees. Put another way, if appellants had not suffered the wrongs complained of by them, they would have had no equity in the value of their livestock for appellees held liens on all until the debts owing by appellants were paid.

The judgment as entered does not indicate upon what theory the trial court reached the conclusions upon which it was based. It is argued by appellants that it was of necessity based upon either accord and satisfaction or upon appellees' allegations of estoppel. There is nothing in the record which leads us to believe appellants' deductions are correct. But upon the contrary, we believe and so hold that the jury verdict fully supports the judgment. The general rule in this State is that if the judgment of a trial court can be supported by any theory of the pleadings which has support in the evidence, the judgment will not be disturbed by the appellate court. General Bonding & Casualty Ins. Co. v. McCurdy, Tex.Civ.App., 183 S.W. 796, writ of error refused; Rountree v. Lydick-Barmann Co., Tex.Civ.App., 150 S.W.2d 173, writ dismissed, correct judgment, and Neal v. Beck Funeral Home, Tex.Civ.App., 131 S.W.2d 778, writ dismissed.

Finding no reversible error in the record, the judgment of the trial court will be affirmed, and it is so ordered.