**TURNER v. PUGH.**

No. 5672.

Court of Civil Appeals of Texas. Amarillo.

April 16, 1945.

Rehearing Denied May 14, 1945.

Boyer & McConnell, of Perryton, for appellant.

R. T. Correll, of Perryton, and Hoover, Hoover & Cussen, of Canadian, for appellee.

STOKES, Justice.

This suit was instituted July 23, 1943, by the appellant, who at that time was Mary Virginia Scott, in her own behalf and as independent executrix of the last will and testament of J. H. Scott, her deceased husband, against the appellee, T. O. Pugh, upon two promissory notes executed by him to J. H. Scott. On November 8, 1944, in response to a motion in which appellant alleged that since the institution of the suit she had intermarried with M. J. Turner, an order was entered by the court permitting him to enter the case pro forma and the plaintiff was thereafter designated as Mary Virginia Scott Turner. The notes sued upon were dated July 27, 1938, one being in the sum of $4800. and the other in the sum of $4032., due and payable on or before July 27, 1939, and July 27, 1940, respectively.

Appellee filed his answer, in which he alleged the notes had been discharged on June 25, 1941, by an agreement between him and the payee, J. H. Scott, and that he paid to Scott the sum of $700, which was accepted by Scott in full settlement and satisfaction of the entire indebtedness.

The case was submitted to a jury upon one special issue, in response to which the jury found that during the month of April 1941 J. H. Scott agreed to accept in full settlement and satisfaction of the notes sued upon whatever proceeds might be derived from the sale of certain farm machinery and growing wheat, upon which he held a mortgage to secure the payment of the notes. The testimony showed that the appellee sold the farm machinery at an auction sale and it netted $700, which he paid to J. H. Scott on June 25, 1941, and that the wheat crop was a total failure. Judgment was entered in favor of the appellee and appellants duly excepted, perfected their appeal, and present the case here upon fifteen assignments or points of error which, in various ways, present three contentions. They contend that the court erred, first, in permitting the appellee and his wife, over objections of appellants, to detail conversations between them and J. H. Scott in April and June 1941, because the admission of such testimony was in violation of the provisions of Article 3716, R. C. S., commonly known as the "death statute"; secondly, in overruling their motion for a peremptory instruction, because there was no consideration revealed by the testimony which would support an accord and satisfaction; and, thirdly, in refusing to submit to the jury their specially requested issue No. 2 which would have required the jury to determine the question of whether or not J. H. Scott accepted the $700 in full payment and satisfaction of the two notes sued upon.

The record reveals that J. H. Scott died January 6, 1943, and left a last will and testament, in which he made money bequests of $10,000 each to a sister and a brother and bequeathed all of the residue of his estate to his wife, the appellant, Mary Virginia Scott, and appointed her independent executrix. The will was filed in the probate court of Dallas County January 8, 1943, and admitted to probate at the following term. It was further shown, without dispute, that the legacies provided in the will and all of the debts due by the estate had been paid at the time of the trial and, as far as is shown by the record, all claims due the estate had been collected except the two notes herein sued upon. Appellee and his wife testified that in April 1941 they went to Dallas to consult J. H. Scott about borrowing some more money from him. They said he informed them he was not active any more and would not loan them any more money

but that he would like to get the old debt cleared up. They said he told them that if Mr. Pugh would go back to Ochiltree County, sell the farm machinery and the wheat, upon all of which he had a mortgage, and deliver the proceeds of such sales to him, he would give them a complete release of all of the indebtedness. They further testified that at that time they informed Scott that the prospects for the wheat were favorable and that they returned to their home in Ochiltree County and inaugurated an auction sale of the farm machinery, which netted $700. They testified further that after their visit to Scott at Dallas in April the condition of the wheat declined and when they returned to Dallas on June 25, 1941, and paid the $700 to J. H. Scott they informed him the wheat "didn't look very good." They said that Scott remarked that it did not make any difference, he wanted to get the indebtedness cleared up anyway, and told his wife, the appellant, Mary Virginia Scott, to get the papers; that she started to another room, apparently to comply with the request, but when she got to the door she stopped and remarked that the notes were not there but were at Stamford where Scott and his brother owned a business. They said that Scott and his wife promised them they would mail the notes to Pugh at Perryton and that Pugh agreed they might do so. This testimony was objected to by the appellants upon the ground that Mary Virginia Scott Turner was independent executrix of the will of her former husband and had instituted the suit as independent executrix as well as in her personal behalf, and that the testimony was in violation of the provisions of Article 3716, R.C.S., which provides that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against others as to any transaction with, or statement by, the testator, intestate, or ward unless called to testify thereto by the opposite party. The action of the court in overruling their objections to this testimony constitutes appellants' first complaint.

The provisions of Article 3716 apply only to cases in which the executor, administrator, guardian, heir, or legal representative is a necessary party to the suit and in which judgment may be rendered for or against him as such. When the will of J. H. Scott was admitted to probate and

appellant, Mary Virginia Scott Turner, qualified as independent executrix, and when this suit was instituted, the estate owed a number of debts, but while the suit was pending and before the trial all of the debts of the estate had been paid and the special legacies had been distributed as provided by the will. Nothing remained, therefore, to be administered by the executrix and as such executrix she became a mere nominal party to the suit and was such at the time of the trial. The testimony of appellee and his wife, therefore, was not in contravention of the statute, and, in our opinion, it was properly admitted. Matthews v. McLen, Tex.Civ.App., 131 S.W.2d 24; Clark v. Scott, Tex.Civ. App., 212 S.W. 728; Stiles v. Hawkins, Tex.Com.App., 207 S.W. 89; Kidd v. Young, Tex.Civ.App., 185 S.W.2d 173; Frame v. Whitaker, 120 Tex. 53, 36 S.W.2d 149; Parks v. Knox, 61 Tex.Civ.App. 493, 130 S.W. 203; Patton v. Smith, Tex.Civ. App., 221 S.W. 1034; Smith v. Patton, Tex. Com.App., 241 S.W. 109.

Appellants contend that the estate had not been closed and could not be closed until the final determination of this suit because, in making return of the inheritance tax to the Federal Government, the notes herein sued upon were given only a nominal value with the understanding that an amended return would be filed and the accurate value of the indebtedness returned for assessment when the suit was terminated and the value of the indebtedness was ascertained. They say that Mrs. Turner therefore still had duties to perform as executrix of the estate and that she was therefore a necessary party as such executrix. We cannot accede to this contention. The inventory and appraisement showed the estate was possessed of more than $175,000 worth of property after all of the indebtedness and the expenses were paid, more than $50,000 of it being in money. No creditor of the estate had any interest in further proceedings because the debts had all been paid and the special legatees likewise had no interest because their bequests were definite, not affected by the assessment of the estate tax, and had also been fully paid. If an amended return should become necessary and additional taxes should be due the Federal Government, they would have to be paid out of the residue of the estate bequeathed to Mrs. Turner and it was therefore, in practical effect, her personal matter and did

not concern the estate. In our opinion, the executrix was not a necessary party to the suit at the time of the trial and the testimony of the appellee and his wife was not inhibited by the provisions of Article 3716.

Appellants next complain of the action of the court in refusing their motion for a peremptory instruction, because, they assert, there was no consideration to support an accord and satisfaction. The record shows that the aggregate of the notes sued upon was approximately nine thousand dollars. To secure the payment of this indebtedness Scott held a mortgage upon appellee's farm machinery and about six hundred acres of growing wheat. The accord and satisfaction asserted by appellee was based only upon the payment to J. H. Scott of the sum of $700, which was the net proceeds of the auction sale of the farm machinery, and his alleged agreement to accept it in full satisfaction of the notes. At the time Pugh paid the $700 to Scott on June 25, 1941, Scott delivered to him a written release of the mortgage lien, in which it was stated that full payment to satisfy the lien had been received by him. The notes were never canceled and delivered to Pugh although Pugh and his wife testified that both Scott and his wife promised to deliver them by mail at a later date. There was no dispute between the parties as to the amount owing to Scott by Pugh nor was there anything paid by Pugh to Scott which could be considered a consideration for the substituted contract which appellee claims was an accord and satisfaction. The common-law rule is well established in this State, and in every other State in the Union except three, that in the absence of a bona fide dispute between the debtor and the creditor as to the amount owing on a liquidated demand, the debtor's payment to the creditor, at or after maturity, of a sum less than the amount due, although it may be agreed between them that the debt is thereby discharged and a release given, or the payment made by cheque in which it is recited that it is payment in full of the indebtedness, does not constitute an accord and satisfaction. An accord and satisfaction is considered a substituted contract complete within itself and it therefore must be based upon a consideration the same as any other contract. The courts are not concerned with the adequacy of the consideration so long as it is paid and accepted as such, but where the full amount is not paid and no additional consideration is shown, it has been consistently held by our courts that no accord and satisfaction results. Hines v. Massachusetts Mut. Life Ins. Co., Tex.Civ.App., 174 S.W.2d 94; McCarty v. Humphrey, Tex.Com.App., 261 S. W. 1015; Texas Mut. Life Ins. Ass'n v. Young, Tex.Civ.App., 150 S.W.2d 473; Graham v. Kesseler, Tex.Civ.App., 192 S. W. 299; Silvers Box Corporation v. Boynton Lumber Co., Tex.Civ.App., 297 S.W. 1059.

The rule has been severely criticized by some of our courts upon the ground that it denies to free men the right to do as they please with their securities and choses in action. Justice Hunter, in delivering the opinion of the Court in the case of Shelton v. Jackson, 20 Tex.Civ.App. 443, 49 S.W. 415, approved the action of the Supreme Court of Mississippi in arbitrarily repudiating it and suggested that the Supreme court of this State should do likewise. The rule has been a part of the law of this State for more than a hundred years. It was established in England in 1602 by Lord Coke in Pinnel's now famous case and was a part of the common law when the first article of our statutes was written by the Legislature in 1840 making the common law of England the rule of decision in so far as it was not inconsistent with the Constitution and laws of the State. We fail to see anything of a coercive or tyrannical nature in the rule. It does not require a debtor to collect the full amount of his debt. He may still cancel it, if he desires to do so, upon the payment of a portion only and stand by his promise not to collect the balance. Adherence to the rule only reveals a consistency of the courts in demanding that every contract, to be binding and enforcible in law, must be based upon a valid consideration. At all events, it does not lie within the power of the courts to make the law nor to repeal a valid law by judicial decree. That prerogative is, by our system, wisely committed to the legislative branch of the government and, until that department sees fit to act, the courts have no alternative, and should have no desire, to do otherwise than declare the law to be such as they find it in the expressions of constituted authority.

Appellee contends that there was a consideration for the substituted contract of accord and satisfaction. He asserts (1) that the testimony showed he was insolvent, or at least in strained financial circumstances, at the time the settlement

was made; (2) that he agreed with Scott in April 1941 that he would return to Ochiltree County, perform the duty which the mortgage placed upon Scott of selling the machinery, and deliver the proceeds to Scott; and (3) that the effect of the agreement of April 1941 was to transfer and convey to Scott all of Pugh's farm machinery and the six hundred acres of growing wheat, which might have turned out to be worth much more than the amount of his indebtedness to Scott. We do not think any of these items constitute a consideration for the substituted contract. It is intimated in the cases of Shelton v. Jackson, 20 Tex.Civ.App. 443, 49 S.W. 415, and Willis v. City Nat. Bank of Galveston, Tex.Civ.App., 280 S.W. 270, that where the debtor is insolvent and a lesser sum than the full amount due is accepted from him by the payee in full satisfaction of the debt, an accord and satisfaction results because the insolvency of the debtor and the chance of losing the entire debt constitute a sufficient consideration for the acceptance of a lesser amount in payment of the indebtedness. The testimony warrants the inference that Pugh was in strained circumstances financially and that he desired to borrow more money from Scott, but there is nothing in it which indicates that Pugh was insolvent. Mrs. Turner testified that Pugh wanted to get the mortgages on the farm machinery and wheat released so he could get started in business again. She also said, "It had been hard times here," indicating that many other people were likewise in strained financial circumstances, but there is nothing in the testimony which indicates that Scott released the entire debt in consideration of the payment of the smaller sum because of Pugh's strained financial circumstances.

Although it is true that Pugh agreed to return to Ochiltree County, sell the machinery, and deliver the net proceeds to Scott, we do not agree with appellee that this agreement on the part of Pugh and his subsequent execution of it constituted a consideration for an accord and satisfaction. It is true that the mortgage authorized Scott to sell the farm machinery upon default in payment of the debt but it also provided that he might do so by agent or representative and did not bind him personally to make the sale. It may be said that Scott appointed appellee as his agent to make the sale but there is nothing in the record to indicate that he was to be specially compensated for it nor that his compensation was to be the difference between what the machinery brought at the sale and the full amount due upon the notes.

■ Nor are we impressed with appellee's assertion that the effect of the agreement of April 1941 was to transfer from Pugh to Scott the title and ownership of the farm machinery and the growing wheat crop. There was nothing in the conversations with Scott, as detailed by Pugh and his wife, to indicate the farm machinery or wheat was being sold or conveyed to Scott. On the contrary, it is evident that both Pugh and Scott considered that Scott merely held a mortgage on Pugh's property and their dealings and negotiations with reference to it show conclusively that their intention was merely to execute the chattel mortgage as it was written.

In our opinion, the record before us fails to show any consideration whatever for an accord and satisfaction. If no accord and satisfaction was effected by the negotiations between the parties, appellee was not entitled to a judgment in his favor and the court erred in overruling appellants' motion for a peremptory instruction.

■ The third and last contention urged by appellants is that the court erred in refusing to submit to the jury Special Issue No. 2 requested by them, inquiring of the jury as to whether or not J. H. Scott accepted the $700 in full payment and satisfaction of the two notes sued upon. What we have already said disposes of the appeal, but upon another trial, if the case is submitted to the jury, we think it proper to suggest that, under circumstances such as those detailed by the present testimony, this special issue should be submitted to the jury. Scott was informed in the conversations between him and the appellee in April 1941 that the condition of the wheat crop was good. It deteriorated thereafter, however, and ultimately failed entirely. The April conversation contemplated that Pugh would sell the machinery and also the wheat crop. Only the machinery was sold and the crop turned out to be a failure. The only special issue submitted to the jury related to the conversations between the parties in April 1941. It was pertinent to ascertain whether in July 1941, when the condition of the wheat crop had radically deteriorated, Scott was still willing to accept, and did accept, the pro-

ceeds of the sale of the farm machinery alone in full satisfaction of the entire debt. Stephens County v. Haynes, Tex.Civ.App., 284 S.W. 225; Southern Nat. Bank of New York v. Curtis, Tex.Civ.App., 36 S.W. 911; Gulf, C. & S. F. R. Co. v. Gordon, 70 Tex. 80, 7 S.W. 695; Alexander v. Stock Yards Nat. Bank of Fort Worth, Tex.Civ. App., 154 S.W.2d 997; Street v. Smith Bros. Grain Co., Tex.Civ.App., 255 S.W. 778.

Because of the error indicated by what we have said, the judgment of the court below will be reversed, and the cause remanded.